FISHER v. NEW BERN.

(Filed March 13, 1906).

*Cities and Towns — Electric Plant — Commission — Negligence—Corporate Liability.*

1. Where the charter of the defendant city authorized it to operate an electric light plant for the purpose of furnishing lights to the inhabitants of the city and to charge for the use of said lights when furnished to private consumers, the city is responsible for the negligence of the commission established by chapter 41, Private Laws 1903, for the management and control of the plant.

2. Cities and towns, when acting in their ministerial or corporate character in the management of property used for their own benefit or profit, discharging powers and duties voluntarily assumed for their own advantage, are liable to persons injured by the negligence of their servants, agents and officers; and it is immaterial whether such servant, agent or officer be a corporation or an individual.

3. Where powers are granted to cities and towns for public purposes, exclusively, they belong to the corporate body in its public, political or municipal character. But if the grant was for the purpose of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation *quoad hac* is to be regarded as a private company.

4. Where a live electric wire had broken and fallen down in the street, winding it up in a coil and hanging it up on an electric light pole about five and a half or six feet from the ground, in the portion of a city frequented by many people and permitting it to remain suspended for two days, is evidence of negligence.

5. The duty imposed upon persons and corporations maintaining wires charged with electricity, upon the public streets and highways, to exercise a high degree of care for the protection of persons using such highways is imperative.

ACTION by John H. Fisher, Administrator of Boss Cobb,

deceased, against City of New Bern, heard by *Judge H. R. Bryan* and a jury, at the November Term, 1905, of the Superior Court of CRAVEN.

This was a civil action for damages alleged to have been sustained by the plaintiff by reason of the death of his intestate, caused by the negligence of the defendant. The testimony, which upon demurrer must be taken as true, showed that the defendant is a municipal corporation, having the usual powers and duties conferred and imposed upon cities and towns in this State. Section 54, chapter 82, Private Laws 1899, entitled "An Act to Incorporate the City of New Bern," provides "that the board of aldermen are authorized and empowered to construct or buy, maintain and operate an electric plant for the purpose of furnishing light to the inhabitants of said city, water works system and sewerage system, and the said board of aldermen are authorized and empowered to charge reasonable prices for the use of said light, water and sewerage, when furnished to private consumers." Section 55 empowers the city to issue bonds when the proposition to do so has been approved by the qualified voters, for the purpose of buying or erecting a system of light and water, etc. Pursuant to the power vested in the board of aldermen by this act, they purchased a water and sewerage plant and erected an electric light plant. The charter was amended by chapter 41, Private Laws 1903, and the sections of this statute pertinent to the questions presented by this appeal, provide that, for the proper management of the water, sewer and electric light systems, a commission is established. The members of the commission are named in the act and their terms prescribed. At the expiration of such terms, their successors are to be elected in the manner provided for the election of the mayor of the city. The commission is given entire supervision and control of the maintenance, management, etc., of said systems, with power to fix

rates for light, water and sewerage, subject to an appeal to
the board of aldermen. Provision is made for paying the
expenses of maintaining and operating the systems, and pay-
ment of interest on the bonds from rates, etc., and the sur-
plus is directed to be held for a sinking fund to discharge
the principal of the bonds when due. The commission is
required to make quarterly reports to the mayor and board
of aldermen of receipts and disbursements, and is given
power to employ servants and agents to operate the systems,
and to discharge them, etc.

The commission appointed by the Act of 1903 were in
control of the electric light plant when the plaintiff's intes-
tate received the injury from which he died. The plaintiff's
evidence showed that on the night of March 22, 1904, the
electric wire on Queen street was down at Five Points, at
the police round house. The wire was broken by an engine.
The chief of police who saw the wire down, telephoned for
the electrician employed by the commission, whose duty it
was to put up wires and attend to the line. When the elec-
trician came to the place at which the wire was down, he
said that the wire was not dangerous; that it could wait
until morning. He wound up the wire in a coil and tied it
with one end of the wire so that it would not come undone. He
hung it up on the electric light pole, at the corner of Rountree
street, as high as he could reach, about five and a half or six
feet from the ground. It did not seem to be a live wire. It
was the wire to a lamp. The chief of police also telephoned to
the mayor about the wire, who directed him to see the rail-
road agent about it—said he had nothing to do with it.
Large numbers of people generally congregate at the place
where the wire was down. When the chief of police found
the wire in the street, the current was on it. The electrician
said that it was not a live wire and there was no danger in
it. It supplied a 16-candle power light. The same wire
which was run in all houses. Two nights after the wire

was broken, the deceased, walking along the sidewalk, stepped on it and was killed. It was raining. There was some controversy in respect to the appearance of the body of the deceased after death. The defendant interposed a demurrer to the evidence, which was overruled. Verdict for plaintiff, judgment, and appeal by defendant.

W. W. *Clark* for the plaintiff.
W. D. *McIver* for the defendant.

CONNOR, J., after stating the case: The defendant's principal contention is presented by its exception to the following instruction: "Chapter 41, Private Laws 1903, does not create the water and light commission into a separate corporation. The act makes the commission officers and agents of the city of New Bern, and if the jury find that the commisison was negligent, the city would be responsible for such negligence." His Honor correctly construed the statute and drew the proper conclusion in regard to the relation established between the commission and the defendant. The Act of 1903, read in connection with sections 54 and 55, chapter 82, Private Laws 1899, simply establishes a new and separate agency for the management and control of the water, sewerage and light systems. The vice in the defendant's contention lies in the assumption that the board of aldermen constitute the municipal corporation. It is no more the political entity created by the charter than the Legislature is the political entity called the State. Both are mere governmental agencies, established for enabling the people to declare and enforce their sovereign will and purpose. It is entirely immaterial whether the commission is responsible to or under the control of the board of aldermen. Both are responsible to the municipality, which, for the dual purpose of local self-government and performing such other and appropriate powers as are conferred by the charter, is created by the Legislature under the

provisions of the Constitution, Article 8, section 4. If the Legislature had made the commission a corporation, the result would have been the same. It is competent and not unusual for municipal corporations, for convenience in carrying on their varied functions, to use commissions, made bodies corporate; when done, the corporation is a mere agency employed by the municipality with the power of visitation and control in the same manner as if an individual was employed. Such corporations occupy similar relations to the municipality, as the University, the hospitals and the State prison do to the State. They are governmental agencies. Their liability to be sued depends upon the purpose for which they are created. When they are simply agencies of the State, such as counties, they may not be sued for torts committed by the agents, as held in *White v. Commissioners,* 90 N. C., 437, and many other cases. If, as in cities and towns, they have both governmental and business corporate powers conferred, their liability to suits for the torts of their servants and agents depends upon the sphere of activity in which the wrong complained of is committed. In so far as a municipal corporation is engaged in the discharge of powers and duties imposed upon it by the Legislature as governmental agencies of the State, they are not liable for breach of duty by their officers; in that respect, the officers are the agents of the State, although selected by the municipality. When acting in their ministerial or corporate character in the management of property used for their own benefit or profit, discharging powers and duties voluntarily assumed for their own advantage, they are liable to an action to persons injured by the negligence of their servants, agents and officers; and it is immaterial whether such servant, agent or officer be a corporation or an individual. *Moffitt v. Asheville,* 103 N. C., 237, in which the authorities are cited and reviewed by *Mr. Justice Avery; Willis v. New Bern,* 118 N. C., 137. "The distinction is between the exercise of its legislative powers, which it

holds for public purposes and as a part of the government of the country, and those private franchises which belong to it as a creation of the law. Within the sphere of the former, it enjoys the exemption of the government from responsibilities for its own acts and for the acts of those who are independent corporate officers, deriving their rights and duties from the sovereign power." *McIlhenney v. Wilmington,* 127 N. C., 146; Ingersoll on Pub. Corp., 415; *Maximillion v. Mayer,* 62 N. Y., 160; 1 Smith Mun. Corps., sec. 807.

While it must be taken that one of the purposes of the defendant in erecting a system of electric lights was the illumination of its streets, it is equally manifest that in addition to such purpose, was that of selling power to its citizens for their private residences and stores. Section 54, chapter 82, Laws 1899, expressly confers this power, and the amendment of 1903, chapter 41, in no way limits it.

Without expressing any opinion upon the suggestion that the lighting its streets is a governmental function, if that was the sole purpose for which its plant was erected and was being operated, it would seem clear that as the portion of its charter referring to an electric plant gives it the right to generate and sell power, we must conclude that it was exercising this right. *Nelson, C. J.,* in *Bailey v. The Mayor,* 3 Hill, 531, discussing the question, says: "As the powers in question have been conferred upon one of these public corporations, thus blending in a measure those conferred for private advantage and emolument with those already possessed for public purposes, there is some difficulty, I admit, in separating them in my mind and properly distinguishing the one class from the other, so as to distribute the responsibility attaching to the exercise of each. But the distinction is quite clear and well settled, and the process of separation practicable. To this end, regard should be had, not so much to the nature and character of the various powers conferred, as to the object and purpose of the Legislature in conferring them. If

granted for public purposes, exclusively, they belong to the corporate body in its public, political or municipal character. But if the grant was for the purpose of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation *quoad hac* is to be regarded as a private company. It stands on the same footing as would any individual or body of persons upon whom the like special franchises had been conferred." In that case, the plaintiff sued for the negligent construction of a dam across the Croton river by the agents of the city. The work was done under the control of commissioners, appointed by the Legislature. The same argument was made as in this appeal. The court said in response thereto that the city was under no obligation to accept the charter or amendments, but, having done so, it was bound for the acts of a commission appointed by the Legislature. That case has been uniformly followed by the courts of New York and other States. In *Chicago v. Selz,* 202 Ill., 545, it is said: "The injury to the plaintiff did not arise from negligence in the use of its hydrant for the purpose of extinguishing fire. The business of selling water to inhabitants and street sprinkling contractors is not an exercise of the police power, and the city is not exempt from liability for negligence in maintaining such a system."

The conclusion is irresistible that the commission was the agent of the city, and that upon the maxim *respondeat superior,* it must answer for any injury sustained by its negligence.

In respect to the merits of the case, His Honor properly instructed the jury that "negligence is the failure to observe, for the protection of the interest of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury." It hardly admits of argument that hanging a live wire on a pole, in the manner testified to by all of the witnesses, in the portion of a city frequented by many persons,

and permitting it to remain suspended for two days, in the place and under the circumstances testified to, is evidence of negligence.   We see no reason to modify the language of *Cook, J.,* in *Mitchell v. Electric Co.,* 129 N. C., 166.. The duty imposed upon persons and corporations maintaining wires charged with electricity, upon the public streets and highways, to exercise a high degree of care for the protection of persons using such highways, is imperative.   The defendant insists that the wire, with which the plaintiff's intestate came in contact, causing his death, was charged with a current of only 110 voltage, and could not produce death.   The evidence shows that, notwithstanding the theory of the electrician, it did cause death.   He was mistaken either in the voltage or its effect upon a human body.   The man either touched it, as contended by the defendant, or stepped on it, as contended by the plaintiff and as found by the jury, and was instantly killed.

Persons controlling so dangerous and subtle an agency as electricity must not be permitted to theorize in regard to its probable effects, or speculate upon the chances of results affecting human life.   The wires must be either insulated or placed beyond the danger line of contact with human beings, using the public streets in a lawful way.   While the testimony regarding the manner in which the contact was brought about is conflicting, the jury have, upon a fair and impartial instruction, accepted the plaintiff's view.   The question of contributory negligence was properly submitted.   We find no error in the rule laid down in regard to the measure of damages.

The judgment must be

Affirmed.