O. E. SMITH, ADMINISTRATOR OF NONNIE SMITH, v. C. R. WHARTON.

(Filed 2 July, 1930.)

**Physicians and Surgeons C b—Where evidence does not tend to show that alleged negligence proximately caused damage nonsuit is proper.**

Where in an action to recover damages for the death of plaintiff's intestate, alleged to have been caused by the negligence of the defendant physician in performing an operation on her, there must be sufficient

SMITH v. WHARTON.

evidence of a causal relation between the alleged acts of negligence and the injury, and where the evidence viewed in the light most favorable to the plaintiff fails to show that the alleged acts of negligence of the defendant, in failing to exercise due care to make an adequate examination of the deceased before the operation, and his alleged negligence in leaving her before she recovered from the effects of the anæsthetic without providing a nurse, were a proximate cause of the death of the intestate, the defendant's motion for judgment as of nonsuit is properly allowed.

CLARKSON, J., concurring in result.

APPEAL by plaintiff from *MacRae, Special Judge,* at October Special Term, 1929, of ROCKINGHAM. Affirmed.

This is an action to recover damages for the death of plaintiff's intestate, caused, as alleged in the complaint, by the negligence of the defendant, a physician and surgeon, who, at the request of the plaintiff, had performed an operation on said intestate about one hour before her death.

Plaintiff's intestate, Nonnie Smith, was his wife. She died on 30 May, 1928, at plaintiff's home in Rockingham County. At the date of her death she was eighteen years of age. For several months prior to her death, she was pregnant, with her first child. She had been under the professional care of the defendant, who was engaged in the practice of medicine in Rockingham County, since 16 February, 1928. She was expecting to be confined during the month of June.

Examinations made by defendant from time to time, at his office, prior to 29 May, 1928, disclosed that she was in good physical condition, despite the fact that her feet and legs had begun to swell. On 29 May, 1928, an examination made by defendant at his office showed that her kidneys were in bad condition. Defendant advised plaintiff that her kidneys were poisoned and that an immediate operation was advisable for the purpose of delivering the child. After some discussion between plaintiff and defendant as to whether the operation should be performed in a hospital or at plaintiff's home, upon defendant's advice that the operation was simple, and that he could perform it, with the assistance of another physician, at plaintiff's home, it was decided that the operation should be performed the next day at plaintiff's home.

At about 9 o'clock on the morning of 30 May, 1928, defendant went to the home of plaintiff. Upon being advised that his patient had taken salts the night before, as he had prescribed, that she had taken nothing except a cup of coffee and a glass of milk for breakfast, and that she was feeling all right, defendant, accompanied by plaintiff, went to Reidsville to make arrangements to secure the assistance of another physician.

Defendant and the assistant physician went to plaintiff's home, arriving there at about twenty minutes to eleven o'clock. After the assistant physician had examined the patient in the presence of the defendant, to ascertain the condition of her heart, they began the operation at fifteen minutes to eleven. During the operation, chloroform was administered to the patient. When the operation was concluded at 12 o'clock, she was "asleep," from the effects of the chloroform. The assistant physician remained at the home of the plaintiff for about five minutes after the operation was concluded, and then left. The defendant remained for thirty or thirty-five minutes. During this time, he was in the room with the patient, and frequently examined her pulse, and observed her condition. Before leaving, defendant told the plaintiff that his wife was getting along all right, that he had other patients whom he must visit, and that he would meet plaintiff in his office at one o'clock, to give him medicine for his wife. Plaintiff left his home about ten minutes to one o'clock and went in his automobile to the office of defendant—a distance of about three miles. Defendant met the plaintiff at his office, and gave him medicine for his wife. While plaintiff was away from his home, his wife died, suddenly. Only her mother and members of the family were present when she died. None of them was a competent nurse. There was evidence tending to show that just before her death, she had a severe hemorrhage. She did not fully recover from the effects of the chloroform or of the shock incident to the operation, prior to her death.

In his complaint, plaintiff alleged that defendant was negligent, first, in that he failed, by the exercise of due care, to properly prepare his patient, plaintiff's intestate, for the operation, and second, in that after the operation, and before his patient had recovered from the effects of the anæsthetic administered to her during the operation, and from the shock incident thereto, he left her without making provision for the presence of another physician or of a competent nurse; and that such negligence was the direct and proximate cause of the death of plaintiff's intestate. On these allegations, plaintiff demanded judgment that he recover of defendant the sum of $50,000, as damages.

At the close of the evidence for the plaintiff, on motion of defendant, the action was dismissed as of nonsuit.

From the judgment dismissing the action, plaintiff appealed to the Supreme Court.

*Dillard S. Gardner and P. T. Stiers for plaintiff.*
*King, Sapp & King and Glidewell, Dunn & Gwyn for defendant.*

CONNOR, J. Applying the well settled rule uniformly enforced in this jurisdiction with respect to the consideration of the evidence on a motion

SMITH *v.* WHARTON.

for judgment as of nonsuit, made as provided by C. S., 567 (*Goss v. Williams,* 196 N. C., 213, 145 S. E., 169, *Nash v. Royster,* 189 N. C., 408, 127 S. E., 356, *Oil Co. v. Hunt,* 187 N. C., 157, 121 S. E., 184, *Christman v. Hilliard,* 167 N. C., 4, 82 S. E., 949), to the evidence in the instant case, we are of the opinion that there was no error in the judgment dismissing this action at the close of the evidence for the plaintiff. Considering the evidence in the light most favorable to the plaintiff, and giving him the benefit of every reasonable intendment, and of every reasonable inference which can be drawn therefrom, as we are required to do by the rule, we concur in the opinion of the trial court that there was no evidence from which the jury could have found that plaintiff is entitled to recover of the defendant in this action. The judgment must therefore be affirmed.

Conceding, but not deciding, that there was evidence tending to show that defendant was negligent as alleged in the complaint, in that he failed to exercise due care to make an adequate examination of his patient before the operation, or in that he left his patient, even temporarily, after the operation and before she had recovered from the effects of the anæsthetic and from the shock incident to the operation, without exercising due care to provide a competent nurse for her, we fail to find, after a most careful consideration of all the evidence, induced by sympathy for the plaintiff in the loss which has befallen him by the untimely death of his young wife, any evidence legally sufficient to show a causal relation between the acts of the defendant, either of commission or of omission, and the death of plaintiff's intestate. The evidence tending to show that his patient died within an hour after the operation, which he had performed on her, and before she had recovered from the effects of the anæsthetic administered to her under his direction, or from the shock incident to the operation, does not show that her death was caused by any breach of duty which he owed her, as her physician. The burden was on the plaintiff to show by evidence, not only that defendant was negligent as alleged in his complaint, but also that his negligence was the direct and proximate cause of her death. Accepting the testimony of all the witnesses as true, and conceding that the weight of the evidence is a matter for the jury and not for the court, this evidence was not of such character as reasonably to warrant the inference of all the facts which plaintiff had alleged in his complaint as constituting his cause of action against the defendant. Under the law as declared by this Court, it is not sufficient that the evidence raises merely a surmise or conjecture that the facts may be as plaintiff has alleged in his complaint. Unless the evidence tends reasonably to show all the facts to be as plaintiff has alleged in his complaint, as essential to his right to recover in the action, it should not be submitted to the

jury. In that case, the action should be dismissed, on a motion made in accordance with the provisions of C. S., 567. In *Byrd v. Express Co.,* 139 N. C., 273, 51 S. E., 851, it is said: "The fact that the defendant has been guilty of negligence, followed by an injury, does not make him liable for that injury, which is sought to be referred to the negligence, unless the connection of cause and effect is established, and the negligent act of the defendant must not only be the cause, but the proximate cause of the injury. The burden was therefore upon the plaintiff to show that defendant's alleged negligence proximately caused his intestate's death, and the proof should have been of such character as reasonably to warrant the inference required to be established, and not merely sufficient to raise a surmise or conjecture as to the existence of the essential fact." See *Pangle v. Appalachian Hall,* 190 N. C., 833, 131 S. E., 42. The principle is approved in *S. v. Sigmon,* 190 N. C., 684, 130 S. E., 854, where it is said that the foregoing is a correct statement of the law in this jurisdiction.

We do not decide the question discussed in the briefs filed in this Court, as to whether in the absence of testimony of expert witnesses tending to show that defendant, a physician and surgeon, failed to exercise the care ordinarily required of men of his profession, with respect to patients, under circumstances similar to those in the instant case, plaintiff was not entitled to recover in this action, for that there was no evidence from which the jury could find that he was negligent. This question does not necessarily arise on this appeal, and does not seem to have been presented heretofore to this Court. The decisions of other courts are not uniform. We do not deem it wise to discuss or to decide the question until it shall be necessary for us to do so. We have had occasion recently in *Nash v. Royster,* 189 N. C., 408, 127 S. E., 356, to review the decisions of this Court, and of other courts, in cases involving the duties which the law imposes upon physicians and surgeons with respect to their patients. It would seem that while there may be cases in which the plaintiff is not required to offer as evidence to sustain his allegation that defendant has been negligent because of his failure to perform one or more of these duties, the testimony of experts tending to show such breach, there may be other cases in which the failure to offer such evidence must result in a judgment dismissing the action. In the opinion of *Taft, Circuit Judge,* in *Ewing v. Goode,* 78 Fed., 442, which is generally regarded as a leading case on this question, it is said:

"In many cases, expert evidence, though all tending one way, is not conclusive upon the court and jury, but the latter, as men of affairs, may draw their own inferences from the facts, and accept or reject the statements of experts; but such cases are where the subject of discussion is on the border line between the domain of general and expert know-

ledge, as, for instance, where the value of land is involved, or where the value of professional services is in dispute. There the mode of reaching conclusions from the facts when stated is not so different from the inferences of common knowledge that expert testimony can be anything more than a mere guide. But when a case concerns the highly specialized art of treating an eye for cataract, or for the mysterious and dread disease of glaucoma, with respect to which a layman can have no knowledge at all, the court and jury must be dependent on expert evidence. There can be no other guide, and, where want of skill or attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury."

In the instant case, the judgment dismissing the action as upon nonsuit, is affirmed for the reason that there was no evidence from which the jury could have found that the negligence of defendant as alleged in the complaint, was the direct and proximate cause of the death of plaintiff's intestate. It does not appear that if defendant, another physician or a competent nurse had been with her, she would not have died, nor does it appear that her death was the result of her condition prior to the operation which could have been discovered by any examination which it was the duty of the defendant to make. A physician and surgeon is not an insurer of the life of his patient; even where he has failed to exercise due care in the treatment of his patient, or in the performance of an operation, he cannot be held liable for the death of his patient, in the absence of evidence legally sufficient to show that his negligence was the cause of the death.

Affirmed.

CLARKSON, J., concurring in result.