N. L. BROUGHTON, ADMINISTRATOR OF LYNN BROUGHTON, DECEASED, V. STANDARD OIL COMPANY OF NEW JERSEY, D. HENRY ALLEN, DOING BUSINESS AS ALLEN'S SERVICE STATION, AND B. R. POOLE.

(Filed 2 July, 1931.)

1. **Master and Servant C f—Assumption of risk applies only where relation of master and servant exists.**

   The doctrine of assumption of risk is applicable only where the relation of master and servant exists between the parties.

2. **Negligence A a—Negligence is the want of due care under the circumstances.**

   Actionable negligence is the want of due care under the existing circumstances and is conveniently defined to be "the failure to observe for the protection of the interest of another that degree of care, precaution or vigilance which the circumstances justly demand, when some other person suffers injury."

3. **Negligence A c—Evidence held insufficient to show negligence in installing and inspecting gasoline tanks in filling station.**

   The plaintiff's intestate brought action against the defendant oil company, alleging that it was negligent in respect to gasoline tanks owned and installed by it at a filling station. The evidence tended to show that the defendant, under contract with the owner of the station, installed its own tanks, pumps and appliances, and inspected them at intervals to see that they were in good condition and properly operated; that on Wednesday prior to the explosion early Saturday morning there was found in the basement of the station a quantity of gasoline floating on water collecting there from heavy rains; that the fluids were drained, but that there remained a very perceptible odor of gasoline about the station, that the intestate was employed as a helper at the station; that prior to the explosion, the intestate, while intoxicated, went to sleep in the station in violation of the orders of the lessee; that the manager of the station, while searching for a key dropped by a customer, struck a match igniting the gasoline fumes causing the explosion: *Held*, in the absence of notice that gasoline had been found in the basement the oil company cannot be held negligent in failing to inspect between that time and the time of the explosion, and there being no evidence tending to show that the tank had leaked during the preceding year, and no evidence that the oil company was under duty to repair, and the evidence raising only a conjecture as to whether the gasoline had leaked from the tank or whether it got there from improper use of the appliances by the employees, it is insufficient to establish negligence on the part of the defendant, and its motion as of nonsuit should have been allowed.

4. **Negligence B a—Where evidence of negligence is insufficient, question of proximate cause need not be considered.**

   Where the evidence is insufficient to establish the negligence of the defendant, the question of proximate cause need not be considered, but in this case there was evidence that the independent act of a third person was the sole proximate cause of the injury.

**5. Evidence N b—Sufficiency of evidence to go to jury.**

Evidence must be sufficient to raise more than a conjecture or suspicion of the fact to be proved in order to be sufficient to be submitted to the jury.

**6. Negligence C a—Held: evidence disclosed contributory negligence barring administrator's right to recover.**

Where, in an action by the administrator of an employee of a filling station to recover for his death caused in an explosion thereat, the evidence tends to show that the intestate had knowledge of the presence of gasoline fumes about the station, and the fact that a few days prior to the explosion gasoline was found in the basement of the station, and that the intestate, while intoxicated, in violation of the orders of the lessee operator of the station, went to sleep in the station, that others in the station at the time of the explosion escaped without serious injury, but that the intestate failed to escape because he was asleep at the time: *Held*, the evidence discloses contributory negligence of the intestate barring the administrator's right to recover against the oil company owning, installing and inspecting the tanks upon allegations of negligence on its part in respect thereto.

CLARKSON, J., dissenting upon evidence stated in his opinion.

STACY, C. J., concurs in dissenting opinion.

APPEAL by defendant, Standard Oil Company of New Jersey, from *Sinclair, J.,* at September Term, 1930, of WAKE. Reversed.

This is an action to recover damages for the death of plaintiff's intestate, caused by an explosion in a filling station, owned by the defendant, B. R. Poole, and leased by him to the defendant, D. Henry Allen, who operated the same under the name of Allen's Service Station. The tanks in which gasoline was stored for sale at said filling station, and the pumps and equipment which were used in its operation, were installed by the defendant, Standard Oil Company of New Jersey, and owned by said company at the time of the explosion. The said tanks, pumps and equipment were subject to the inspection of the defendant, Standard Oil Company of New Jersey, and were frequently inspected by said company, in order to ascertain whether or not they were being properly used and were in good condition.

It is alleged in the complaint that the explosion which caused the death of plaintiff's intestate was the result of the negligence of the defendants, as specifically alleged therein. In the answers filed by the defendants, each defendant denied the allegations of the complaint which constitute the cause of action on which plaintiff seeks to recover.

At the close of the evidence introduced by the plaintiff, each of the defendants moved for judgment as of nonsuit. The motion of the defendant, B. R. Poole, was allowed, and the action was dismissed as to him. The motions of the other defendants were denied. No evidence was offered by either of these defendants.

The defendant, Standard Oil Company of New Jersey, excepted to the refusal of the court to allow its motion for judgment as of nonsuit, at the close of the evidence for the plaintiffs.

The said defendant also excepted to the refusal of the court to instruct the jury, as requested by said defendant, in writing and in apt time, that if the jury believed all the evidence, and found the facts to be as testified by all the witnesses, they should answer the first issue, "No," and the third issue, "Yes."

The issues submitted to the jury were answered as follows:

"1. Was the death of plaintiff's intestate caused by the negligence of the defendant, Standard Oil Company of New Jersey, as alleged in the complaint? Answer: Yes.

2. Was the death of plaintiff's intestate caused by the negligence of the defendant, D. Henry Allen, as alleged in the complaint? Answer: No.

3. Did the plaintiff's intestate, by his own negligence, contribute to his death? Answer: No.

4. Did the plaintiff's intestate assume the risk incidental to the employment in which he was engaged? Answer: No.

5. What amount, if any, is plaintiff entitled to recover of defendants? Answer: $5,000."

There was judgment that plaintiff recover nothing of the defendant, D. Henry Allen, and that the action be dismissed as to said defendant.

From judgment that plaintiff recover of the defendant, Standard Oil Company of New Jersey, the sum of $5,000, together with the costs of the action, the said defendant appealed to the Supreme Court.

*Bunn & Arendell, Thos. A. Banks and Biggs & Broughton for plaintiff.*

*Pou & Pou for defendant.*

CONNOR, J. At the date of his death, to wit, 29 September, 1928, plaintiff's intestate, Lynn Broughton, was employed by the defendant, D. Henry Allen, as a helper at a filling station located near the town of Garner, in Wake County, North Carolina. The filling station was owned by the defendant, B. R. Poole, and had been leased by him to the defendant, D. Henry Allen, who was operating it under the name of Allen's Service Station. The defendant, Standard Oil Company of New Jersey, owned the tanks in which gasoline was stored for sale at said filling station; it also owned the pumps and equipment which were used in its operation. This defendant had installed the said tanks, pumps and equipment, and from time to time, inspected the same for the purpose of ascertaining whether or not they were being properly used and were in good condition.

Between three and four o'clock on the morning of Saturday, 29 September, 1928, plaintiff's intestate was injured by an explosion which occurred in the filling station. His death resulted instantly from his injuries. He had gone on duty at about 7 o'clock on Friday evening, 28 September, 1928. He procured a substitute for .a few hours that night, and was absent from the filling station until about 12 o'clock. During this time he attended a chatauqua in the town of Garner. After his return to the filling station, he resumed his work, and was engaged in the performance of his duties about the premises until about 1 o'clock. He then lay down on a cushion in the filling station and fell asleep. He had been drinking whiskey during the night, and was under its influence when he lay down and fell asleep. He and other employees of the defendant, D. Henry Allen, had been expressly forbidden to sleep at the filling station at night. Efforts of the manager of the filling station to awaken him after he fell asleep were unavailing. While he was asleep, there was a terrific explosion in the filling station resulting in injuries to plaintiff's intestate, from which he died almost instantly.

While plaintiff's intestate was asleep, between three and four o'clock, a customer came into the filling station. There was at this time an odor of gasoline, about the premises, which was quite noticeable. The manager of the filling station and the customer were the only persons present, except plaintiff's intestate. While they were looking for a key on the floor, the manager struck a match; a bluish flame immediately appeared along the floor over the basement of the filling station. This was followed by an explosion which wrecked the filling station. Both the manager and the customer escaped through the open doors of the filling station, without serious injury. Plaintiff's intestate was killed by the explosion. If he had been awake, he also could have escaped through the open doors of the filling station.

On Wednesday afternoon preceding the Saturday morning when the explosion which killed plaintiff's intestate occurred, employees of the defendant, D. Henry Allen, discovered that water and gasoline had accumulated in the basement of the filling station. A heavy rain had fallen during the day. After the rain, it was discovered that water and gasoline had accumulated in the basement to a depth of about five inches. There was a coating of gasoline on the water about three-fourths of an inch thick. Fumes from this gasoline were decidedly noticeable. Ditches were dug on Thursday, and the water and gasoline drained from the basement. These ditches were dug by employees of the defendant, D. Henry Allen. After the water and gasoline were drained from the basement, the basement was washed out by the use of a hose. Prior to this time, for at least six months, the basement of the filling

station had been dry and clean; there had been no gasoline or gasoline fumes in the basement. Plaintiff's intestate was at the filling station, when the water and gasoline were discovered in the basement, on Wednesday afternoon. He was also at the filling station on Thursday and Friday. He knew of the conditions in the basement on Wednesday afternoon, and knew that there had been fumes of gasoline about the filling station on Thursday and Friday.

One of the tanks installed by the defendant, Standard Oil Company of New Jersey, and owned by said company at the time of the explosion, had a capacity of 1,000 gallons. This tank was located about twenty feet from the basement of the filling station, in which water and gasoline were discovered on Wednesday afternoon preceding the explosion. Gasoline purchased from said defendant for sale at the filling station was stored in this tank. It was buried in the ground, with its bottom on a level with the bottom of the basement. Gasoline was drawn from this tank by means of pumps and equipment which had been installed and which were owned by said defendant. The pumps and equipment were used by the operator of the filling station and his employees for drawing gasoline from the tank and delivering it to customers. Both the tank and the pumps and equipment used in the operation of the filling station were subject to inspection by the defendant, Standard Oil Company of New Jersey. There was no evidence tending to show that said company was notified at any time between Wednesday afternoon and Saturday morning that gasoline had been discovered in the basement, or that there were gasoline fumes about the filling station.

The answer of the jury to the fourth issue, involving the defense of assumption of risk by plaintiff's intestate, appearing in the record, is immaterial on this appeal. Plaintiff's intestate was not an employee of the defendant, Standard Oil Company of New Jersey, at the date of his death; he was an employee of the defendant, D. Henry Allen. This appeal is by the defendant, Standard Oil Company of New Jersey, against whom alone judgment was rendered by the Superior Court in favor of the plaintiff. There was judgment on the verdict that plaintiff recover nothing of the defendant, D. Henry Allen, the employer of plaintiff's intestate. There was no appeal from this judgment. As between the plaintiff and the defendant, Standard Oil Company of New Jersey, assumption of risk by plaintiff's intestate was not available as a defense in this action. There was no contractual relation between plaintiff's intestate and said defendant. *Cobia v. R. R.*, 188 N. C., 487, 125 S. E., 18.

On its appeal to this Court the defendant, Standard Oil Company of New Jersey, contends that there was no evidence at the trial of this action tending to sustain the allegations of the complaint upon which

its liability to plaintiff is predicated, and that all the evidence introduced by plaintiff shows that his intestate, by his own negligence, contributed to his injuries and death, and that, therefore, there was error in the refusal of the trial court (1) to allow its motion, made at the close of all the evidence, for judgment as of nonsuit, and (2) to instruct the jury as requested by it with respect to the answers to the first and third issues. These are the only issues raised by the pleadings which are determinative of the right of plaintiff to recover of the defendant in this action.

The action is for the recovery of damages resulting from the death of plaintiff's intestate, caused by the negligence of the defendant. Negligence as the foundation of legal liability has been variously defined, but all the definitions by text-writers and by the courts involve the idea of want of due care under the circumstances. 45 C. J., 624. Judge Cooley in his work on Torts defines negligence as "the failure to observe, for the protection of the interest of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby some other person suffers injury." Cooley on Torts (3d ed.), pp. 1324, 1325. This definition has been adopted or quoted with approval in a large number of cases and characterized as the best definition of the term. See *Fisher v. New Bern,* 140 N. C., 506, 53 S. E., 342, 111 Am. S. R., 857, 5 L. R. A., 542.

Plaintiff's right to recover and defendant's liability for damages in this action are both predicated upon allegations in the complaint of actionable negligence on the part of the defendant, first, in that defendant failed to exercise due care in the construction and installation of the tanks, pumps and equipment at the filling station, owned by the defendant, B. R. Poole, and operated by the defendant, D. Henry Allen, as lessee; and, second, in that defendant failed to exercise due care in the inspection of said tanks, pumps and equipment, after they had been constructed and installed. It is specifically alleged in the complaint that defendant's negligence in these two respects was the proximate cause of the death of plaintiff's intestate.

There was no evidence at the trial tending to show negligence on the part of the defendant in either respect. All the evidence introduced by the plaintiff shows that the tanks, pumps and equipment installed by the defendant for the storage and distribution of gasoline at the filling station, had been used by the successive operators of the filling station for more than a year without any evidence of leaks indicating defects therein.

There was evidence that gasoline was stored in the tanks and distributed by means of the pumps and equipment to customers of the filling station; that on Wednesday afternoon preceding the Saturday

morning when the explosion which caused the death of plaintiff's intestate occurred, there was a coating of gasoline on water in the basement of the filling station. Whether the gasoline in the basement had leaked from the tanks because of defects therein, or whether it had got into the basement because of improper use by the employees of the filling station of the pumps and equipment, is a matter altogether of speculation and conjecture. It is well settled that evidence which does no more than raise a suspicion, justifying, it may be, speculation and conjecture that a fact material to the cause of action alleged in the complaint, may be as alleged therein, is not sufficient for submission to the jury as tending to sustain the allegation of the complaint. *Denny v. Snow,* 199 N. C., 773, 155 S. E., 874; *Smith v. Wharton,* 199 N. C., 246, 154 S. E., 12; *Byrd v. Express Co.,* 139 N. C., 273, 51 S. E., 851. In *Masten v. Texas Oil Company,* 194 N. C., 540, 140 S. E., 89, it was held by this Court that evidence showing that water in a well located one hundred and thirty feet from a tank in which gasoline was stored, was polluted by gasoline, should have been submitted to the jury as tending to show that the gasoline in the well came from the tank. This, however, was in an action for damages resulting from the pollution of the water in plaintiff's well, and not for damages resulting from the negligence of the defendant, the owner of the tank. The distinction is, we think, apparent. In the action for the pollution of his well, all that the plaintiff was required to allege and prove was that his well was polluted by gasoline from the tank owned and maintained by the defendant. In the instant case, plaintiff was required not only to allege, but also to offer evidence tending to show that the presence of the gasoline in the basement of the filling station was the result of the failure of the defendant to exercise due care with respect to the tanks, pumps and equipment, which were installed and owned by the defendant, and subject to its inspection.

There was no evidence at the trial of the instant case tending to show that the defendant was notified or knew that gasoline had been discovered in the basement of the filling station on Wednesday afternoon, or that there were fumes from gasoline about the premises during Thursday and Friday. In the absence of such notice or knowledge, on the facts shown by all the evidence, it cannot be held that the failure of the defendant to inspect the tanks, pumps and equipment installed and owned by it, but in the possession of the operator of the filling station, between Wednesday afternoon and Saturday morning, was evidence of the want of due care on the part of defendant to inspect the same. Both the tanks and pumps and equipment, although owned by the defendant, were in the possession of the operator of the filling station. The defendant had the right and was under the duty to the operator of the

filling station and to its owner, by reason of its contract with them, to inspect the tanks, pumps and equipment, only for the purpose, however, of ascertaining whether or not they were being properly used and were in good condition. It does not appear from the evidence that defendant had any duty, contractual or otherwise, with respect to the repair of said tanks, pumps or equipment in the event defects therein were discovered by an inspection. It had no right and was under no duty with respect to the premises in and about the filling station as was the case with the defendant in *Rushing v. Texas Co., 199 N. C., 173, 154 S. E., 1.* For this reason the instant case is distinguishable from that case.

As we are of the opinion that there was no evidence at the trial of this action tending to show negligence on the part of the defendant, as alleged in the complaint, we need not discuss the question as to whether or not such negligence, if it had been shown by the evidence, was the proximate cause of the explosion which resulted in the death of plaintiff's intestate. All the evidence shows that there would have been no explosion, notwithstanding the presence of gasoline fumes in and about the filling station, if the manager had not struck the match immediately before the explosion. There was evidence tending to show that this was a negligent act on the part of the manager of the filling station, and that this act was the sole proximate cause of the explosion.

We are further of the opinion that all the evidence introduced by the plaintiff at the trial shows that the death of his intestate was the result of his failure to exercise due care for his own safety. In violation of the express orders of his employer, plaintiff's intestate went to sleep in the filling station, and thus failed to escape, as he could have done if he had been awake, when it was apparent that there would be an explosion caused by the striking of a match by the manager of the filling station. With knowledge of the presence of gasoline fumes in and about the filling station, as the result of the conditions in the basement on Wednesday afternoon, and continuing in some respects through Thursday and Friday, plaintiff's intestate went to work in the filling station on Friday night, while under the influence of whiskey. The plaintiff is and should be precluded from recovery in this action because the death of his intestate was caused by his own negligence.

For error in the refusal of the court to allow defendant's motion for judgment as of nonsuit, on the ground that there was no evidence tending to show that defendant was negligent, as alleged in the complaint, the judgment is reversed. The action is remanded to the Superior Court of Wake County, that judgment may be entered dismissing the action.

Reversed.

10—201

CLARKSON, J., dissenting: Plaintiff's intestate, a young man 32 years of age, was a capable and experienced filling station man, and at the time of his death was employed at Allen's Service Station, in the town of Garner. On the night of 29 September, 1928, plaintiff's intestate was at the filling station, on duty, and while he was lying or reclining on a cushion in the filling station, a customer of the station and another employee were looking for some article that had fallen on the floor about 3 or 4 o'clock on Saturday morning, 29 September, 1928. A match was struck by the other employee, there was a blue flame, followed by a terrific explosion that wrecked the filling station and caused the immediate death of plaintiff's intestate.

Suit was brought against B. R. Poole, as the owner of the station, D. Henry Allen, as lessee and operator of the filling station, and Standard Oil Company of New Jersey, as the admitted owner of the tanks, pumps and equipment. It was alleged in the complaint and admitted in the answer of the defendant, Standard Oil Company, that it owned the tanks and pumps at the filling station, installed the same, and from time to time inspected the same. Evidence was offered on the part of plaintiff showing that a few days prior to the explosion there was an accumulation of as much as five inches of water and gasoline in the basement of the filling station, and that the fumes arising therefrom were so strong as to overcome a workman who went into the basement to install some piping or wiring. There was further evidence that while this condition had been improved by a drainage ditch, there was still a strong presence of fumes at the filling station on the night of the explosion, and immediately prior to the explosion.

There was evidence tending to show that the plaintiff's intestate had been drinking on the night of the explosion, and also evidence to the contrary. Plaintiff offered evidence showing that one White, lessee of the filling station prior to the tenancy of defendant, Allen, discovered the strong presence of fumes near the big gasoline tank while making installation of a small tank nearby; also that said White discovered in the operation of the filling station a loss of at least ten gallons of gas a day from the big tank on account of a leak or seepage; that he brought this to the attention of the representative of the Standard Oil Company, and that this representative came out and sealed the tank for the purpose of making a check, and that under such test it showed a loss of at least three inches in twelve hours. This was some six months before the explosion.

The evidence showed that the ground sloped from the direction of the big tank, owned and installed by defendant, Standard Oil Company, in the direction of the basement of the filling station. It was the contention of the plaintiff that the big tank had some sort of leak and that

from this leak there was a seepage of gasoline which found its way to the basement of the filling station, resulting in the accumulation of gas and fumes with the consequent explosion causing the death of plaintiff's intestate.

Plaintiff offered in evidence certain paragraphs of the complaint, together with answers of the defendant, Standard Oil Company. From these portions of the pleadings offered in evidence the following will appear to be undisputed:

(a) That the pumps and tanks and equipment in connection therewith at said filling station, were owned by the defendant, Standard Oil Company;

(b) That said tanks, pumps and equipment were installed by the defendant, Standard Oil Company;

(c) That the said defendant from time to time examined and inspected the said equipment for the purpose of seeing if the same was being properly used and in good condition.

From these admissions and facts of the case, it is manifest that if there was any negligence with respect to the condition of the said tanks at the time of the installation thereof, or in connection with the installation itself, or in connection with the inspection of said tanks, such negligence was the negligence of the defendant, Standard Oil Company. Nobody else had the duty or the right to do anything with reference to remedying any condition or defect in said equipment.

In addition to the responsibility resting upon the defendant, Standard Oil Company, arising out of its ownership, installation and inspection duty with reference to said tanks and equipment, there were the following facts and circumstances offered in evidence by the plaintiff as affecting the liability of defendant, Standard Oil Company:

The testimony of witness A. A. White was to the effect that he operated the filling station for a period of twelve months prior to the time defendant, Allen, operated the same, his tenancy terminating just a few months prior to the explosion; that the big gasoline tank was in use at the station at the time of his tenancy; and that he bought his gasoline from the Standard Oil Company; that while he was using the station a smaller tank was put in at the station at the eastern end of the big tank, by the Standard Oil Company; that while the hole was being dug for the installation of this smaller tank and after getting four or five feet down into the ground, the presence of gasoline fumes were detected; that during his operation of the filling station, he experienced a loss of gasoline and checked up closely on the big tank and found that it was checking short to the extent of ten gallons per day, and that it continued to check short until the time that he gave up the station; that he called this to the attention of the representative of the Standard Oil Com-

pany; that this representative came out and sealed the tank for the purpose of making a check, and that after this was done the tank showed a loss of about three inches in twelve hours. This tank held 1,000 gallons of gasoline.

It was contended by plaintiff that this was sufficient evidence to go to the jury on the question of whether or not there was some leak or defect in the big tank owned, installed and inspected by the defendant, Standard Oil Company. Not only was there evidence of defect, but direct evidence that such defect was brought to the attention of said defendant. No evidence was offered tending to show that the defendant did anything whatever to remedy such defect or to prevent the leakage and seepage of gasoline from this tank.

There was evidence offered by the plaintiff that the big gasoline tank was directly in front of the filling station, and that the big tank was about twenty feet from the basement of the filling station, and that the ground sloped from the direction of the big tank toward the basement of the filling station.

There was testimony that for a considerable time previous to Wednesday (prior to the explosion early Saturday morning, 3 or 4 o'clock) the weather had been dry, but that on Wednesday and for the next day or two, there was an exceptionally heavy rain.

There was undisputed testimony to the effect that on Wednesday prior to the explosion on the following early Saturday morning, there was a strong odor of gasoline from the basement of the filling station and that when the trap door to the basement was opened, it was found that there were several inches of water and gasoline in the basement; that a milk bottle was let down into the basement and drawn up two-thirds full with at least three-fourths of an inch of gasoline in the bottle, and that when the contents of the bottle were poured on the ground and a match struck, it ignited and burned, and that when an employee undertook to go down into the basement he was nearly overcome with the fumes, and had to be pulled out.

There was also evidence by the plaintiff that while a ditch was dug on Thursday to let the gasoline and water out from the basement, the fumes never did leave the basement up to the time of the explosion. The ditch caved in Friday morning and the drain stopped.

The testimony of witness, Arch Wood, was to the effect that on the night of the explosion and immediately previous to the explosion, when he came up to the station, there was a strong and noticeable odor of gas fumes, so much so that he called out to plaintiff's intestate to know if he was not stifling from the fumes; that when a match was struck by Marvin Wall, who was in charge of the station, while looking for a key, there was a bluish flame that run around the cracks on the floor of

the station, followed by a terrific explosion that wrecked the filling station and caused the death of plaintiff's intestate.

The plaintiff contends that the foregoing circumstances clearly and strongly supported by the evidence, were such that the jury was justified in concluding that there was a leak in the big tank due either to a defect in the tank or defective installation, or defective inspection and to the failure of the defendant, Standard Oil Company, to do anything with respect thereto after it had been brought to its notice, and that such leakage amounted to as much as ten gallons per day; and that this amount of gasoline saturated the earth toward the bottom of the big tank to such an extent that there was a seepage in the direction of the basement of the filling station, this being the direction of the natural slope of the land; that such seepage was accelerated by the heavy rainfall immediately preceding the explosion, and that the presence of a large quantity of gasoline and water in the basement of the filling station and the consequent oppressive and dangerous fumes therefrom were due to said seepage from the tank, and that the presence of such fumes and the accumulation thereof in the basement of the filling station caused the explosion resulting directly in the destruction of the filling station and the immediate death of plaintiff's intestate.

No other explanation was offered or reason given for the presence of such an accumulation of gasoline and water in the basement, and the evidence, I think, was sufficient to go to the jury on the question of whether or not this condition resulted from the negligence of the defendant, Standard Oil Company, in respect to the said tank equipment, and the further question as to whether such negligence was the proximate cause of the death of the plaintiff's intestate.

Sherman and Redfield on Negligence, sec. 58: "If facts proven render it probable that the defendant violated his duty, it is for the jury to decide. To hold otherwise would deny the value of circumstantial evidence. In the nature of his case the plaintiff must labor under difficulties. The proof of negligence, and that fact is always a relative one, is susceptible of proof by evidence or circumstances bearing on the fact of negligence."

I think there was no error in the refusal of the court to allow the motion for nonsuit upon the contention that the plaintiff's intestate was as a matter of law guilty of contributory negligence.

If it may be conceded that there was evidence of contributory negligence on the part of the plaintiff's intestate, but this evidence was sharply disputed and this issue was, therefore, properly left for determination by the jury.

There was evidence that plaintiff's intestate was an experienced and capable filling station employee, and that on the night of the explosion

he was engaged in the performance of his regular duties, and that while he was lying down at the time of the explosion, there were two employees of the station at the time, and that it was the custom and practice of the employees for one of them to lie down while the other worked, and that for this purpose there was an automobile cushion and blankets located on the lower part of the tire-rack on one side of the filling station; that while defendant, Allen, did not furnish any cushions or blankets, and did not authorize or permit the employees to sleep while on duty, he was down at the filling station every day, and there was no evidence that he ever objected to the presence of the cushions or blankets with their manifest indication for the purpose for which they were used.

Likewise with respect to the question of whether or not the plaintiff's intestate was under the influence of liquor on the night of the explosion. There was evidence from which the jury might have concluded that the plaintiff's intestate was drinking, and likewise evidence equally strong to the effect that he was in no sense under the influence of liquor on the night in question. Assuming that the question of plaintiff's intestate's drinking, if he had been drinking, entered into the question of contributory negligence, this was a matter in sharp dispute and was certainly a question for the jury to decide.

It is contended by the defendant on the question of contributory negligence that the negligence of plaintiff's intestate in failing to get out of the station after the match was struck and before the actual explosion, was the proximate cause of his death; that he had ample time to get out without injury, and that if he had not been lying down or asleep or intoxicated, he could easily have gotten out without injury. This, of course, was a legitimate matter for argument on the part of the defendant, but it could not be said from the evidence, that the plaintiff's intestate was, as a matter of law, guilty of contributory negligence. The witness Wood got out of the filling station, it is true, but only after he had been blown to the ceiling, and then stepped out the front door, which had been blown out by the force of the explosion. It is also true that employee Wall got out of the filling station after the explosion, but the evidence discloses that he was on fire when he came out, and only narrowly escaped with his life.

As to whether the plaintiff's intestate had an opportunity to get out, the evidence discloses that the blue flames which sprang up when the match was struck, came through the floor all around the sides, and that he was lying near the side of the building when his body was found after the explosion, and it was on the cushion, and that he had not turned over, and that his face was up. The evidence discloses that his

life was snuffed out by the fumes and the explosion, with no opportunity on his part to make a move toward escape.

I think there was sufficient evidence to be submitted to the jury on the issues. The jury have found the issues in favor of plaintiff and the judgment rendered thereon in favor of plaintiff. The verdict and judgment should not be disturbed.

STACY, C. J., concurs in dissent.