RALPH E. AMMONS AND WIFE, DORIS C. AMMONS; HOWARD M. COBLE AND WIFE, GLADYS C. COBLE; TERESA L. DANIEL; EVA HARRIS; PAT H. HENARD AND WIFE, RUTH HENARD; LARRY W. HICKS AND WIFE, LOUVINE I. HICKS; RUTH MILLER; JOAN CAROL PEGRAM; CLAUDE M. SHROPSHIRE AND WIFE, COLEAN M. SHROPSHIRE; A. J. SMITHEY AND WIFE, MARGARET B. SMITHEY; RALPH E. SMITHEY AND WIFE, RACHEL I. SMITHEY; GARY K. STALEY AND WIFE, DONNA S. STALEY; AND DON MICHAEL VARNER, APPELLANTS v. WYSONG & MILES COMPANY, APPELLEE

No. 9218SC861

(Filed 6 July 1993)

**Waters and Watercourses § 3.2 (NCI3d); Trespass § 3 (NCI3d) — contamination of well water — source of pollution — summary judgment for defendant — no error**

The trial court properly granted summary judgment for defendant in an action for negligence, nuisance, trespass, and strict liability under N.C.G.S. § 143-215.75 arising from contamination of plaintiffs' wells where defendant discovered that an underground pipeline at its facility was leaking TCA, informed the proper authorities, hired a company to assess the leakage and perform remedial work, and the engineer in charge concluded from the hydrogeology of the area that defendant could not have been responsible for the contamination of plaintiffs' wells. Causation is a common element in each claim asserted by the appellants and plaintiffs failed to show that the potential sources of contamination from Wysong's property caused them damage. Affidavits which plaintiffs contend rebut the conclusions of defendant's engineer do not state that Wysong was responsible for the contamination, were not inconsistent with the conclusion of defendant's engineer, or did not address the wells at issue in this case. Furthermore, the contention that plaintiffs suffered damages in addition to contamination of their wells because they were assessed for water and sewer line installation in their neighborhood was without merit.

Am Jur 2d, Pollution Control §§ 479, 513, 515, 520, 565.

Liability for pollution of subterranean waters. 38 ALR2d 1265.

Landowner's right to relief against pollution of his water supply by industrial or commercial waste. 39 ALR3d 910.

AMMONS v. WYSONG & MILES CO.

[110 N.C. App. 739 (1993)]

Appeal by plaintiffs from judgment signed 11 May 1992 by Judge Judson D. DeRamus, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 18 June 1993.

Appellants live on or own real property in the Lacey Allred Farms Subdivision (Lacey Subdivision) in Guilford County, North Carolina. Wysong & Miles Company (Wysong), the appellee, owns and operates a manufacturing facility located northeast of and adjacent to Lacey Subdivision.

On 16 October 1990 appellants filed a complaint against Wysong in which they alleged that Wysong (1) stored "1,1,1-trichloroethane" (TCA) and "various other hazardous substances" in storage tanks; (2) that in October 1987 Wysong discovered that an underground pipe carrying TCA was leaking; (3) and that as a result of the discharge of "TCA and other substances into the ground water" the appellants' wells and septic systems have become contaminated. Appellants alleged four different theories of liability: violation of the Oil Pollution and Hazardous Substances Control Act, G.S. § 143-215.75; negligence; nuisance and trespass. On 21 November 1990 Wysong filed an answer generally denying that it had contaminated appellants' wells.

On 15 April 1992 Wysong filed a motion for summary judgment which came on for hearing at the 11 May 1992 session of Guilford County Superior Court. A summary of the evidence presented at the hearing follows:

Wysong presented the affidavit of Gary M. Wisniewski, a professional registered engineer. Mr. Wisniewski testified that in 1987 Wysong discovered that an underground pipeline, which ran from an aboveground storage tank, was leaking 1,1,1-trichloroethane (TCA). The leakage was reported to the proper governmental authorities, and Wysong hired HDR Infrastructure, Inc. (HDR) to assess the leakage and perform necessary remedial work. At that time Mr. Wisniewski, an employee of HDR, was named Project Manager. Mr. Wisniewski "was responsible for conducting the actual assessment work and interpreting the assessment data in order to develop a plan of remediation." In 1988 Mr. Wisniewski left HDR to join Delta Environmental Consultants, Inc. (Delta) as Senior Environmental Engineer. Mr. Wisniewski continued coordination of the Wysong project through Delta.

Mr. Wisniewski's assessment revealed the following information, illustrated by the ground water table evaluation contour map (7/30/90) (Attachment B) in the appendix to our opinion:

6. Two potential sources of contamination have been identified at the Wysong site. The first is the leaking line from the TCA tank, located on the north side of the Wysong building. The second source is a basin, located on the south side of the Wysong building, which was used to dispose of waste coolant oils that contained some concentrations of TCA.

7. The Lacey Allred Subdivision is located to the southwest of the Wysong site.

8. Based on the data that has been developed by Delta and otherwise made available for our review, the hydrogeology of the Wysong site and the surrounding area is such that the sources of contamination at the Wysong site could not be responsible for the contamination that has been discovered in the wells of homes located in the Subdivision that are represented in the lawsuit.

9. Specifically, the data that has led to this conclusion is as follows:

a. A map of the ground water potentiometric surface constructed from water level measurements from monitoring wells screened across the water table in the area shows a significant hydraulic gradient illustrating that the ground water flows in a northeasterly direction, flowing from the Subdivision toward the Wysong site. This map is attached as Attachment B.

b. The contamination of shallow wells in the subdivision, specifically MW-3 and the shallow supply well at 5829 Carla Lane, could only have been contaminated by a source at or upgradient of the well locations. The nearest contamination source on the Wysong site is over 600 feet downgradient from MW-3 and the shallow supply well at 5829 Carla Lane.

c. The contaminant concentration gradients are inconsistent with a conclusion that the source originated on the Wysong site. The highest contaminant levels off of the Wysong site were found in the shallow supply well at 5829 Carla Lane. There are two shallow monitoring wells on the Wysong property, MW-8 and MW-2, which are situated directly between the

shallow supply well at 5829 Carla Lane and the nearest Wysong source. MW-8 originally showed only very trace levels of contamination and MW-2, which is located immediately upgradient of the Wysong source, originally showed no contamination.

d. Since the start-up of a recovery and remediation system on the Wysong site, the contaminant levels in MW-8 and MW-2 have steadily increased. This data, combined with the fact that contaminant levels remain elevated in the MW-3 and the well at 5829 Carla Lane, leads to the conclusion that contamination is now being drawn onto the Wysong site from the area of the subdivision.

e. There are inconsistencies in the analytical data from all of the wells in the area that suggest an additional source(s) other than the documented Wysong sources. Specifically, compounds have been detected in wells in the Subdivision that have not consistently or routinely been detected in the wells located on the Wysong site.

f. Recent chemical analyses of a surface water sample from a stream valley located southwest of the Wysong source revealed the presence of one type of contaminant. Past chemical analyses of a monitoring well sample (MW-6), located between the stream valley and the Wysong source did not contain the specific type of contaminant. As a result, the contaminant type detected in the stream valley surface water sample is interpreted to have originated from an upgradient source. The Subdivision is located upgradient of the stream valley.

This above-referenced data supports the conclusion that an off-site source of contamination exists and is migrating onto the Wysong site from the Subdivision area. This off-site source is the most likely source of the contamination detected in the Subdivision wells represented in the above-referenced lawsuit.

Wysong also presented an affidavit of Alan Barry Nelson, Vice President and Senior Hydrogeologist at the firm of Bain, Palmer & Associates, Inc. Through his affidavit Mr. Nelson testified that he had prepared an earlier affidavit in 1991, which was submitted in this litigation by the appellants, concerning his study of contamination of the Mahaffey well, a deep well located in the Lacey Subdivision. In the earlier affidavit, Mr. Nelson testified that he did not have any evidence from which to determine the "directional

orientation" of fracture traces between the Texaco well and the Mahaffey well. He also testified that under certain "pumping conditions" a cone of depression could develop which would extend from the Mahaffey's well to the Wysong property and pull contaminants back to the Mahaffey's well. Dr. Nelson concluded that "there is no data that would indicate that the Texaco site is a more likely source of contamination of the Mahaffey property on Anita Lane than other area sources." The affidavit submitted by Mr. Nelson for the present litigation stated:

3. In reviewing information for the preparation of [the earlier] affidavit, I reviewed information as it might be related to the Mahaffey well, located in the Lacey Allred Subdivision. The Mahaffey well is a deep well, located on the border of the Wysong property, at a point in the Subdivision that is in closest proximity to the basin area on the Wysong property.

4. I did not intend to express an opinion regarding the source of contamination in those wells that are the subject of this lawsuit. I also have not reviewed any data generated regarding the Wysong site since the time of my [earlier] affidavit. I have not expressed an opinion or given testimony with regard to shallow wells located upgradient of the Mahaffey well.

Wysong's partial summary of proceedings, included in the record on appeal, states that the parties stipulated that the Mahaffey well is downgradient and closer to the Wysong property than the wells at issue before us.

Appellants also submitted the affidavits of Mr. A.J. Smithey, Jr., an appellant, and Dr. Nicholas L. Bogen, Director of Groundwater Services at Trigon Engineering Consultants, Inc. Through his affidavit Mr. Smithey testified that to his knowledge the property located at 5829 Carla Lane and immediately surrounding 5829 Carla Lane, "has never been exposed to the chemical TCA." Mr. Smithey further testified that in his opinion that that property "could not be the source of the TCA contamination in the wells at the Lacey Allred Farms Subdivision."

Dr. Bogen testified in part:

3. That 1,1,1-trichloroethane (TCA) has a specific gravity greater that water (1.34 sp.g.) and thus would sink through

the groundwater by any available pathway, including fractures in the bedrock.

4. That subsurface geologic data generated by Delta Environmental Consultants, Inc. indicates that fractures do exist in the bedrock under the subject properties. See attached Exhibits 1 through 5. In addition, said data indicated that U.S. Highway 29 runs along a ridge crest which is probably a groundwater divide. Therefore, there is only a limited potential source area for the contamination in the Plaintiff's neighborhood.

5. That it is possible that the relatively low concentration of TCA in monitoring well 2 is due to some local subsurface geologic anomaly.

On 11 May 1992 Judge DeRamus filed an order allowing defendant's motion for summary judgment on all claims asserted by appellants.

*Egerton, Quinn & David, by Nancy P. Quinn, for the plaintiff-appellants.*

*Smith, Helms, Mulliss & Moore, by Stephen W. Earp and Ramona J. Cunningham, for the defendant-appellee.*

EAGLES, Judge.

Appellants contend that the trial court erred by entering summary judgment in favor of the defendant on each of their claims, *i.e.*, strict liability under the Oil Pollution and Hazardous Substances Control Act (G.S. § 143-215.75), negligence, nuisance and trespass. We disagree and affirm.

Summary judgment is granted in favor of the moving party where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Gore v. Hill*, 52 N.C. App. 620, 279 S.E.2d 102 (1981). A defending party is entitled to summary judgment if he can show that the claimant cannot prove the existence of an essential elements of his claim or cannot surmount an affirmative defense which would bar the claim. *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981).

*Carpenter v. Merrill Lynch Realty Operating Partnership, L.P.,* 108 N.C. App. 555, 558, 424 S.E.2d 178, 179 (1993) (quoting *Little*

*v. National Service Industries, Inc.*, 79 N.C. App. 688, 690, 340 S.E.2d 510, 512 (1986).

Here, causation is a common element necessary in each claim asserted by the appellants. G.S. § 143-215.93 of the Oil Pollution and Hazardous Substances Control Act provides that "[a]ny person having control over oil or other hazardous substances which enters the waters of the State in violation of this Part shall be strictly liable, without regard to fault, for damages to persons or property, public or private, *caused by such entry*, subject to the exceptions enumerated in G.S. 143-215.83(b)." (Emphasis added). In order to sustain a claim of actionable negligence a plaintiff must show that the defendant's breach of duty proximately caused plaintiff's injury. *Westbrook v. Cobb*, 105 N.C. App. 64, 411 S.E.2d 651 (1992). "A trespass to real property requires three elements: 1. Possession by the plaintiff when the trespass was committed, 2. An unauthorized entry by the defendant, and 3. *Damage to the plaintiff from the trespass." Kuykendall v. Turner*, 61 N.C. App. 638, 642, 301 S.E.2d 715, 718 (1983) (citing *Matthews v. Forrest*, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952) (emphasis added). Finally, in order to sustain an action for nuisance, a plaintiff must show that defendant's actions caused him substantial damage. *Pendergrast v. Aiken*, 293 N.C. 201, 236 S.E.2d 787 (1977).

Here, we hold that appellants have failed to show that the potential sources of contamination from Wysong's property caused them damage. In reaching our decision we rely on our Supreme Court's recent opinion in *Wilson v. McLeod Oil Co., Inc.*, 327 N.C. 491, 398 S.E.2d 586 (1990), *reh'g denied*, 328 N.C. 336, 402 S.E.2d 844 (1991). In *Wilson*, defendants argued that they were not responsible for contamination of the Hills' and Paguras' (plaintiffs) wells because the forecast of evidence indicated that the defendants' site was downgradient from the plaintiffs' wells. However, the plaintiffs argued *inter alia* that:

there could be a lower aquifer below the upper aquifer with a different flow direction from that of the upper aquifer . . . [and] that the depositions of the experts do not foreclose the possibility of the existence of this lower aquifer whose flow direction might bring the contamination to the Hill and Pagura properties from the Mini-Mart property . . . which is "downhill" from the Hill and Pagura properties.

*Id.* at 521, 398 S.E.2d at 602. An expert with the North Carolina Department of Natural Resources and Community Development (NRCD) testified by deposition that it was possible that a lower aquifer could run in a different direction. Our Supreme Court held that plaintiffs failed to present a sufficient forecast of evidence and said:

> Without more data in support of it, the answer, "that's possible," when asked if the flow direction could be different below the level where the NRCD had tested, is a slender reed upon which to base causation. It is not a sufficient forecast of evidence to survive the summary judgment motion . . . . To allow a jury to consider the question of whether there is a lower aquifer flowing in a different direction, when the only expert testifying on this matter refuses to answer that very question based on the data collected, is improper.

*Id.* at 522, 398 S.E.2d at 602-03.

Here, appellants argue that "the affidavits of Dr. Bogen, Mr. Nelson, and Mr. Smithey clearly rebut the conclusions reached by Mr. Wisniewski regarding Appellee's responsibility for the contamination of the Appellants' wells." We disagree.

Dr. Bogen testified that TCA can sink through groundwater "by any available pathway, including fractures in the bedrock." He also testified "[t]hat subsurface geologic data generated by Delta Environmental Consultants, Inc. indicates that fractures do exist in the bedrock under the subject properties." However, Dr. Bogen did not testify in his deposition that TCA actually travelled to the Lacey Subdivision property by fractures in the bedrock or that any existing fractures have such a configuration that TCA would travel from the Wysong property to the Lacey Subdivision property. Moreover, his opinion that there is a limited potential source area for the contamination of Lacey Subdivision is not inconsistent with Mr. Wisniewski's opinion that Wysong was not responsible for the contamination of appellants' wells.

Mr. Smithey's affidavit also fails to state that Wysong was responsible for the contamination. Rather, Mr. Smithey merely testified that, as far as he knew, the property located at 5829 Carla Lane "has never been exposed to the chemical TCA" and "could not be the source of the TCA contamination in the wells at the Lacey Allred Farms Subdivision." Moreover, appellants inap-

propriately rely on the early affidavit of Dr. Nelson. Dr. Nelson's subsequent affidavit, submitted by Wysong, makes clear that the early affidavit did not address the wells at issue in the instant case and that he did not intend to express any opinion in regard to those wells. Accordingly, we hold that appellants have failed to present a sufficient forecast of the evidence to withstand Wysong's motion for summary judgment.

Appellants also argue that they have suffered damages in addition to those resulting from contamination of their wells.

The contamination of the wells is only one cause of the damages Appellants have suffered. We would contend that but for the release of TCA by Appellee, Appellants would not have been assessed for the water and sewer line installation in the neighborhood.

We have carefully examined this contention and find it to be without merit. Accordingly, it is overruled.

Because of our disposition of the foregoing issues, we need not address the remaining issues raised on appeal.

Affirmed.

Judges GREENE and LEWIS concur.