DANIEL ELLINGTON, AND WIFE, KAY ELLINGTON, APPELLANTS V. DAVID HESTER, AND WIFE, LINDA HESTER, APPELLEES

No. COA96-1057

(Filed 5 August 1997)

**Environmental Protection, Regulation, and Conservation § 84 (NCI4th)— contamination of well water—leaking underground tank on adjacent property—failure to prove causal connection**

     In an action in which plaintiffs seek to recover under theories of strict liability under the Oil Pollution and Hazardous Substances Control Act, negligence, nuisance and trespass for the contamination of their well water by petroleum that allegedly leaked from an underground storage tank on defendants' adjacent property, the trial court properly granted defendants' motion for a directed verdict because plaintiffs failed to establish a causal connection between the leakage of gasoline from defendants' underground tank and contaminants found in plaintiffs' well water where plaintiffs' expert witnesses testified that they did not have sufficient evidence to determine that leakage from this tank was the source of the contamination of plaintiffs' well.

Appeal by plaintiff from Order entered 3 April 1996 by Judge W. Steven Allen in Randolph County Superior Court. Heard in the Court of Appeals 12 May 1997.

The plaintiffs, Mr. and Mrs. Ellington, own and occupy a residence located in Archdale, Randolph County, North Carolina. The plaintiffs' property is used primarily as a residence, however, Mr.

ELLINGTON v. HESTER

[127 N.C. App. 172 (1997)]

Ellington operates a car refurbishing business in the detached garage behind their home. The plaintiffs' property is served by a 150 foot deep well.

The defendants, Mr. and Mrs. Hester, own the tract adjacent to the plaintiffs' property. The Hester property consists of the Hester residence, a garage, and fourteen mobile homes which the Hesters operate as a rental park. The plaintiffs' and defendants' property share the same aquifer which is the sole source of fresh water for the plaintiffs' household use.

In January 1994, the plaintiffs noticed that their drinking water had a foul odor and a bad taste and the plaintiffs developed skin irritations from contact with the water. Plaintiffs contacted the Division of Environmental Management of the North Carolina Department of Environment, Health, and Natural Resources (DEHNR). DEHNR took water samples from the plaintiffs' well. After several tests, DEHNR determined that the plaintiffs' water contained benzene (a chemical known to cause cancer in humans), xylene, 1,3,5 trimethylbenzene, methyltertbutylether (MTBE), and methylene. MTBE and benzene are components found in gasoline and petroleum products.

Steve Williams, a hydrologist with DEHNR, came to the area to investigate potential sources of the contamination. In the course of his investigation, Steve Williams inquired whether the defendants were aware of the presence of any underground petroleum storage tanks on their property. The defendants first said "no," but several days later, informed DEHNR about the existence of two abandoned underground storage tanks (UST) on their property. Mr. Hester indicated that the tanks had not been used for years.

With the assistance of the defendants, DEHNR located two USTs on the defendants' property; one 275 gallon tank and one 1000 gallon tank. The defendants' USTs were located "a couple hundred feet" upgradient from the Ellington well. Both USTs had been used in the past for gasoline storage. As part of an earlier renovation, the defendants had filled the smaller 275 gallon tank with concrete. Neither UST contained gasoline at the time of DEHNR's on-site investigation. On 30 August 1994, DEHNR supervised the closure and removal of both USTs from the defendants' property. After both USTs were removed, Steve Williams took soil samples from the area of the USTs for testing. Tests on the soil samples indicated there had been a release of gasoline from the larger (1000 gallon) tank. On 17 October 1994, DEHNR notified the defendants that tests indicated a release of gaso-

line from the 1000 gallon tank had occurred and that as owners and operators of the tank, the defendants were "required . . . to immediately undertake to collect and remove the discharge or release and to restore the area affected." Based on their financial inability to clean up the site, the defendants applied for and were accepted into a State program allowing North Carolina to "assume the lead" in evaluating and cleaning up the affected site. The State retained S&ME, a private environmental consulting firm, to evaluate and set up monitoring wells on the site.

On 24 March 1995, the Ellingtons filed suit against the Hesters under the Oil Pollution and Hazardous Substances Control Act of 1978 (OPHSCA), N.C.G.S. 143-215.75 *et seq.*, alleging negligence, nuisance and trespass arising from the contamination of the Ellingtons' well water with gasoline. In their complaint, plaintiffs alleged that since June 1994, the plaintiffs' drinking water "was discolored, had a foul odor, and bad taste, and irritated their skin" and that "[t]he State of North Carolina, Department of Environmental, Health, and Natural Resources, further advised the Plaintiffs that it had identified the underground storage tanks located at the Hester property as a probable source of the contamination of the Plaintiffs' groundwater." The plaintiffs complained that as a result of the gasoline contamination, their "well water is no longer safe for drinking or other household purposes" and they have "suffered expenses for alternate sources of water and other expenses, personal injury, pain and suffering, diminution in value, fear of future disease, increased likelihood of future disease and physical problems, diminished quality of life and mental distress."

At the close of the plaintiffs' evidence, defendants moved for a directed verdict which the trial court allowed. Plaintiffs appeal.

*Nancy P. Quinn for plaintiff-appellants.*

*Hill, Evans, Duncan, Jordan & Davis, by R. Thompson Wright, for defendant-appellees.*

EAGLES, Judge.

By their sole assignment of error, the plaintiffs contend that the trial court erred in granting the defendants' motion for a directed verdict on each of the plaintiffs' claims, i.e. strict liability under the Oil Pollution and Hazardous Substances Control Act (G.S. 143-215.75, *et seq.*), negligence, nuisance and trespass. We disagree and affirm.

The purpose of a motion for a directed verdict is to test the legal sufficiency of the evidence. *Hinson v. National Starch & Chemical Corp.*, 99 N.C. App. 198, 201, 392 S.E.2d 657, 659 (1990). "In deciding the motion, the trial court must treat non-movant's evidence as true, considering the evidence in the light most favorable to the non-movant, and resolving all inconsistencies, contradictions and conflicts for non-movant, giving non-movant the benefit of all reasonable inferences drawn from the evidence." *McFetters v. McFetters*, 98 N.C. App. 187, 191, 390 S.E.2d 348, 350 (1990). To overcome a motion for a directed verdict and take the question of causation to the jury, the plaintiff's evidence must indicate a "reasonable scientific probability that the stated cause produced the stated result." *Hinson*, 99 N.C. App. *at* 202, 392 S.E.2d *at* 659. "When evidence raises a mere conjecture, surmise, and speculation as to causation, it is insufficient to present a question of causation to the jury." *Id.* (citations omitted).

Causation is the common element at issue in each claim asserted here by the plaintiffs. The Oil Pollution and Hazardous Substances Control Act provides:

> Any person having control over oil or other hazardous substances which enters the waters of the State in violation of this Part shall be strictly liable, without regard to fault, for damages to persons or property, public or private, caused by such entry. . . .

N.C.G.S. 143-215.93 (1996). In order to establish an actionable claim for negligence, the plaintiff must show that the defendant's breach of duty proximately caused the plaintiff's injury. *Westbrook v. Cobb*, 105 N.C. App. 64, 67, 411 S.E.2d 651, 653 (1992). To sustain an action for nuisance, the plaintiff must show that the defendant's actions caused him substantial damage. *Pendergrast v. Aiken*, 293 N.C. 201, 216, 236 S.E.2d 787, 796 (1977). Furthermore, an action for trespass to real property requires plaintiff show that defendant's unauthorized entry onto plaintiff's property caused damage to plaintiff's property. *Kuykendall v. Turner*, 61 N.C. App. 638, 642, 301 S.E.2d 715, 718 (1983).

In *Masten v. Texas Co.*, 194 N.C. 540, 140 S.E. 89 (1927), all the plaintiff was required to show was that his well was polluted by gasoline from the tank owned and maintained by the defendant. *Broughton v. Oil Co.*, 201 N.C. 282, 288, 159 S.E. 321, 323 (1931). The Supreme Court concluded that evidence showing that the defendants installed a gasoline tank and pump one hundred and thirty feet upgradient from the plaintiff's well; that the defendant's tank was the only

ELLINGTON v. HESTER

[127 N.C. App. 172 (1997)]

tank "within half a mile or more of the plaintiffs' home"; and, that the plaintiff's well became contaminated with gasoline after the installation of the defendant's gasoline tank was "more than a scintilla, and sufficient to be submitted to a jury." *Masten,* 194 N.C. *at* 541, 140 S.E. *at* 90. However, the Supreme Court has since held that evidence that the defendant's contaminated site is a "possible" source of the plaintiff's contamination is a "slender reed upon which to base causation" and an insufficient forecast of evidence. *Wilson v. McLeod Oil Co.,* 327 N.C. 491, 522, 398 S.E.2d 586, 602-03 (1990) (expert testimony stating "that's possible" when asked if the water flow direction could be different at a lower aquifer was not sufficient to establish causation and survive the summary judgment motion). Furthermore, expert testimony which establishes only that contaminants "could travel" to the plaintiff's property, not that the contaminants "actually traveled" to the plaintiff's property, is not sufficient to withstand a motion for summary judgment on the issue of causation. *Ammons v. Wysong & Miles Co.,* 110 N.C. App. 739, 746, 431 S.E.2d 524, 529 (1993); *Cf. James v. Clark,* 118 N.C. App. 178, 454 S.E.2d 826 (1995) (expert testimony identifying the defendant's site as the only potential source of contamination and stating that the plaintiff's well is heavily contaminated with gasoline from the defendant's leakage is sufficient to create a genuine issue of material fact).

Here, the plaintiffs have failed to show that a release of gasoline from the UST located on the defendants' property caused the contamination in the plaintiffs' well water. Plaintiffs offered the testimony of several expert witnesses at trial. Steve Williams, a hydrologist employed by DEHNR, investigated potential sources of contamination of the plaintiffs' well water. Mr. Williams testified that the plaintiffs' well water was contaminated with gasoline and that soil tests indicated that there had been a release of gasoline from the defendants' 1000 gallon tank sufficient to leave "a strong odor of gasoline in the soil" removed from underneath the excavated tank. Although Mr. Williams testified that after he "looked around the area" he "didn't see any other possible source . . . [o]f contamination," when asked if he was willing to state an opinion "that Mr. Hester's gasoline around there was the cause of the Ellington's problem," he answered that he did not have "sufficient evidence" to determine that the Hesters' UST was the source of the contamination of the Ellington well.

The plaintiffs also offered the expert testimony of J.D. Barker, an environmental engineer employed by S&ME Environmental Consulting. Mr. Barker never actually visited either the Hester or the

Ellington properties, but had reviewed the information collected by DEHNR. Mr. Barker testified that he had not been able to determine the direction of the ground water flow under the Hester property. He also testified that he was not aware of any contamination in the two wells located on the defendants' property and that "there's not been any contamination in the Williard well which is the next-door neighbor to the Ellingtons." Mr. Barker also testified that he had not "been able to identify the source of the contamination" of the plaintiffs' well. Furthermore, the S&ME "Preliminary Site Assessment" dated 23 February 1996 states "[a]t this time, there is insufficient data to identify the cause or combination of causes for the presence of groundwater contaminants" in the plaintiffs' well water.

To establish a claim for damages caused by the contamination of well water, a plaintiff must offer more than evidence of the contamination of their water and a release of contaminants in the area. The plaintiffs here did not offer any evidence establishing a causal connection between the defendants' release of gasoline from the 1000 gallon UST and the contaminants found in the plaintiffs' well water. Accordingly, we hold that the plaintiffs failed to present a sufficient forecast of evidence to survive the defendants' motion for a directed verdict.

Affirmed.

Judges McGEE and SMITH concur.